# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Chandramouli Vaidyanathan,                    Civil No. 09-1212 (DWF/JSM)

       Plaintiff,

v.                                            **MEMORANDUM**
                                              **OPINION AND ORDER**
Seagate US LLC, a Delaware
limited liability company; and Seagate
Technology, LLC, a Delaware limited
liability company,

       Defendants.

---

Brent C. Synder, Esq., and Stephen J. Snyder, Esq., Snyder & Snyder, P.A., counsel for Plaintiff.

Stephanie D. Sarantopoulos, Esq., and Rhiannon C. Beckendorf, Esq., Littler Mendelson, P.C., counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Cross-Motions for Summary Judgment. For the reasons set forth below, the Court denies Defendants' and Plaintiff's motions.

# BACKGROUND

Plaintiff Chandramouli Vaidyanathan ("Vaidyanathan") is a semiconductor yield engineer.[1]  Defendants Seagate US LLC and Seagate Technology, LLC (collectively, "Seagate") make and sell computer hard drives and storage solutions.  Seagate employed Vaidyanathan from February until December 2008.

Toward the end of 2006, Seagate created the Alternative Technologies Group ("ATG") to support a new semiconductor drive venture.  In October 2007,[2] a recruiter contacted Vaidyanathan about a position for an experienced yield engineer at Seagate's Bloomington, Minnesota facility.  The recruiter sent Vaidyanathan a copy of the position's description, and after Vaidyanathan expressed interest, the two further discussed the job opening via e-mail and telephone.  (Snyder Aff. ¶¶ 3 and 4, Exs. 2 and 3.) Vaidyanathan traveled to Minnesota to interview for the position.

During the interview, Vaidyanathan met with Antoine Khoueir, an engineering manager for Seagate, who told Vaidyanathan that the ATG was "fairly close" to being able to manufacture a finished product.  (Defs.' Mem. in Supp. at 7.)  Vaidyanathan also

---

[1]    Yield engineers ensure the reliability and uniform operation of a product or device.  "A yield engineer's goal is to improve 'good die' – a product which meets the manufacturer's specifications – over 'total die' – the total number of products that are tested."  (Defendants' Memorandum of Law in Support of its Motion for Summary Judgment ("Defs.' Mem. in Supp.") at 4.)  Vaidyanathan began working as a yield engineer at Texas Instruments in Dallas, Texas in 1997 and later became the head of the company's yield engineering department, a position he held until he left Texas Instruments to join Seagate.

[2]    Seagate admits that as of October 2007, the ATG had not created a "finished product" but had developed a test chip for assessment and debugging purposes.  (Defs.' Mem. in Supp. at 4.)

met with several other members of the ATG, toured the facility, and was shown the facility that Seagate was in the process of building to manufacture its new product. (*Id.*)

After the interview, Seagate offered Vaidyanathan a job, and he then negotiated and ultimately accepted a position at Seagate as a Principal R&D Yield Engineer with a salary of $126,048.00, benefits, relocation assistance, stock options, and a signing bonus, and an expectation that he would be promoted to a manager position within six months.[3] (*Id.* at 8; Affidavit of Brent C. Snyder ("Snyder Aff.") ¶ 1, Ex. 1.) Vaidyanathan relocated his family from Texas to Minnesota and began working for Seagate in February 2008.

Vaidyanathan states that he realized shortly after his arrival at Seagate that the ATG was not ready for yield engineering.[4] In fact, he alleges that he never performed any yield engineering duties at Seagate.[5] (Plaintiff's Memorandum in Opposition ("Pl.'s Mem. in Opp'n") at 11.) Vaidyanathan claims that he tried to make the most of the

---

[3] Defendants assert that both during initial discussions regarding the position and at the time he accepted the position, Vaidyanathan knew that the ATG was new and risky. (Defs.' Mem. in Supp. at 6 and 9.)

[4] Seagate states that Vaidyanathan understood that Seagate was not previously in the semiconductor field. (Defs.' Mem. in Supp. at 6.) Seagate also characterizes Vaidyanathan's impressions of ATG once he arrived at Seagate: ". . . he was frustrated with what he perceived as overly ambitious deadlines and unsatisfied with the tools at his disposal to meet objectives." (*Id.* at 2.)

[5] In a response to an interrogatory, Seagate stated: "Seagate has not employed a yield Engineer in the Advanced Technologies Group from October, 2007 to the present." (Snyder Aff. ¶ 7, Ex. 6.) Vaidyanathan also contends that Seagate was unable to produce a document related to this issue stored on his work computer because Seagate erased all of the information on the computer's hard drive after this lawsuit commenced.

situation[6] and did his best to perform the non-yield tasks assigned to him.  (*Id.* at 21-22.)

He was transferred to a different role as Manager of the Technology Integration group a

few months later and received a favorable performance evaluation.  (Affidavit of Brent C.

Snyder ("Snyder Aff.") ¶ 56, Ex. 55.)

On November 3, 2008, Seagate informed Vaidyanathan that his position would be

eliminated effective December 5, 2008, as part of a reduction in force.  (Snyder Aff. ¶ 53,

Ex. 52.)  The Employee Selection Justification Form[7] stated that:

> Mouli, the Manager of Technology Integration was hired to lead a
> yield/product engineering development/team in Integration; however this
> charter never came to fruition because of the task of reducing $10 million
> from ATG/MPG budget.  He then [sic] placed in the role of Manager for
> Technology Integration group which is not his area of expertise to lead.

(Snyder Aff. ¶ 50, Ex. 49.)

Seagate offered Vaidyanathan a severance package but Vaidyanathan refused to

sign the release.  (Snyder Aff. ¶ 54, Ex. 53.)  Vaidyanathan argues that his career as a

yield engineer is now over because of Seagate's misrepresentations.  (Pl.'s Mem. in

Opp'n at 22.)  He states that not working as a yield engineer for over two years has taken

him out of the fast-paced field.  (*Id.*)

Vaidyanathan alleges that he has applied for more than 200 jobs with more than

140 employers since September 2008.[8]  (Plaintiff's Memorandum in Support of Motion

---

[6]     Vaidyanathan states that he would have to repay his signing bonus and relocation
assistance if he voluntarily resigned from his position at Seagate in two years and
12 months, respectively, from February 2008.  (Snyder Aff. ¶ 2, Ex. 1.)

[7]     Mouli is an abbreviation for Vaidyanathan's first name.

for Summary Judgment ("Pl.'s Mem. in Supp.") at 9.)  He also alleges that he has started his own renewable energy start-up business.  (*Id.*)

On April 30, 2009, Vaidyanathan commenced a civil action against Seagate in the Hennepin County District Court in the State of Minnesota.  On May 22, 2009, Seagate removed the action to this Court.  In his complaint, Vaidyanathan alleges fraudulent inducement to enter into an employment contract in violation of Minnesota Statute Sections 181.64-65 and promissory estoppel.

## DISCUSSION

### I.     Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at

---

[8]     In September 2008, Vaidyanathan and all other ATG employees were informed of impending terminations and encouraged to seek other employment.

747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Seagate's Motion

Seagate moves the court for summary judgment regarding Vaidyanathan's fraudulent inducement and promissory estoppel claims.

### A.     Minnesota Statute Section 181.64

The Minnesota statute prohibiting the use of false statements as an inducement to enter employment states in relevant part:

> It shall be unlawful for any person, partnership, company, corporation, association, or organization of any kind, doing business in this state, directly or through any agent or attorney, to induce, influence, persuade, or engage any person . . . to change from any place in any state, territory, or country to any place in this state . . . through or by means of knowingly false representations . . . concerning the kind or character of such work . . . .

Minn. Stat. § 181.64.

Vaidyanathan claims that Seagate knowingly made false representations concerning the kind or character of the position it offered to him, inducing him to give up his job at Texas Instruments to take the job with Seagate. Specifically Vaidyanathan alleges that Seagate represented that he would be hired to do yield engineering when Seagate actually did not need a yield engineer.

Seagate argues that Vaidyanathan has failed to identify any facts to support his claim that Seagate made knowingly false statements regarding the kind or character of the work at Seagate. Seagate contends that Vaidyanathan's belief that Seagate was ready for yield engineering was based on assumptions Vaidyanathan himself made. Additionally, Seagate argues that Vaidyanathan's claim fails because he cannot demonstrate that the allegedly false statements were made knowingly. Seagate explains that the individuals Vaidyanathan interviewed with were not yield engineers. Seagate additionally argues that Vaidyanathan represented that he performed yield engineering at Seagate during his job search. (Defs.' Mem. in Supp. at 21-22.)

Vaidyanathan responds that Seagate made knowingly false statements to him in a written job description, during interviews, and in a written job offer. (Snyder Aff. ¶¶ 2, 3, 5, Exs. 1, 2, and 4; Pl.'s Mem. in Opp'n at 30-32.) For example, Vaidyanathan points out that the title of the job he was offered was "R&D Yield Engineer." (Snyder Aff. ¶ 2, Ex. 1.) Vaidyanathan asserts that Seagate made specific statements that it was ready for manufacturing and yield engineering. (Pl.'s Mem. in Opp'n at 30-32.) Vaidyanathan also argues that although Seagate ATG management were not yield engineers, they knew enough about the field to understand that there was not any yield engineering work for Vaidyanathan to do at Seagate.

Viewing the evidence in the light most favorable to Vaidyanathan, the Court concludes that there are genuine issues of material fact that preclude the entry of summary judgment. At a minimum, the Court finds that there are genuine factual disputes with respect to whether Seagate made false representations regarding the

position and, if so, whether the representations were known to be false. Accordingly, the Court denies Seagate's motion on this claim.

### B. Promissory Estoppel

Promissory estoppel is a creature of equity which implies "a contract in law where none exists in fact." *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981). The elements of the doctrine of promissory estoppel are: (1) was there a clear and definite promise; (2) did the promisor intend to induce reliance, and did such reliance occur; and (3) must the promise be enforced to prevent an injustice. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995). Because promissory estoppel implies "a contract in law where none exists in fact," *Grouse*, 306 N.W.2d at 116, such a claim may not proceed where a legally enforceable contract was formed. *Gorham v. Benson Optical*, 539 N.W.2d 798, 801-802 (Minn. App. 1995).

Vaidyanathan's claim under the doctrine of promissory estoppel concerns the same alleged statements at issue with respect to his fraudulent inducement claim. As an alternative to its fraudulent inducement theory, Vaidyanathan claims that he relied on Seagate's clear and definite promise of a yield engineer position. The Court finds that there are genuine issues of material fact with respect to whether Seagate made a clear and definite promise about the position. As such, the Court denies summary judgment on Vaidyanathan's promissory estoppel claim.

## III. Vaidyanathan's Motion

Vaidyanathan moves the Court for summary judgment dismissing Seagate's affirmative defense of failure to mitigate damages. Vaidyanathan argues that Seagate has

failed to present any evidence to support its affirmative defense that he has not properly mitigated damages and that therefore the Court should award summary judgment in his favor. Vaidyanathan also argues that, even though it is not his burden to prove mitigation, he has provided evidence showing the reasonableness of his mitigation efforts. Vaidyanathan also states that his job search is complicated by the difficult job market and the fact that his expertise is in a very narrow field.

Seagate argues that the Court should deny Vaidyanathan's motion because it is not proper to grant summary judgment on the issue of mitigation. Seagate argues that the issue of mitigation is a question of fact for the jury and represents that it is not aware of any cases where a court granted summary judgment to a plaintiff on the issue. Seagate also contends that the motion is also inappropriate because Vaidyanathan has a duty to mitigate up to the time of trial.[9] Seagate takes issue with the information Vaidyanathan has provided regarding his job search. Seagate, without citing to anything in the record, asserts that "at trial, Seagate will be able to prove its affirmative defense by showing Vaidyanathan refused a job substantially equivalent to his position at Seagate." (Defs.' Mem. in Opp'n 16.) Seagate argues that Vaidyanathan failed to mitigate because his search for alternative employment included positions for which he was not qualified.[10]

---

[9] Seagate argues that Vaidyanathan would be able to discontinue his job search efforts if summary judgment is granted.

[10] The Court does not understand how applying to too many types of jobs establishes failure to mitigate. Rather, it seems that the breadth of Vaidyanathan's search supports a finding that he has tried to find employment.

On the record presently before it, the Court concludes that there is insufficient evidence to establish Vaidyanathan's mitigation as a matter of law. However, the Court assumes that absent foundation being properly laid by Seagate at the time of trial in the form of an offer of proof, on the record the Court has before it now, it is unlikely the Court will allow the defense of lack of mitigation to be presented to the jury.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.     Defendants' Motion for Summary Judgment (Doc. No. [53]) is **DENIED.**

2.     Plaintiff's Motion for Summary Judgment (Doc. No. [43]) is **DENIED.**

Dated:  July 21, 2010                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge